**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Eugene Ruddy and Rebecca Ruddy husband and wife, individually and as parents of S.R., a minor | No. 3:17-cv-423 |
| Plaintiffs | (Judge Richard P. Conaboy) |
| v. | |
| Polaris Industries, Inc., et al. | |
| Defendants | |

**MEMORANDUM**

We consider here Plaintiffs' Motion to File a Third Amended Complaint in the above-captioned matter. This case evolves from an accident in which Plaintiff Rebecca Ruddy and her minor son suffered serious physical injuries while operating a personal watercraft that had been manufactured by original Defendant Polaris Industries, Inc. ("Polaris"). The case is a products liability action and, as it has progressed, other defendants (Federal Mogul LLC) "Federal"); Moeller Marine Products f/k/a Tempo Products, Inc. ("Tempo"); and Carter Fuel Systems, LLC ("Carter")) have been joined as component manufacturers and suppliers to Defendant Polaris. Plaintiffs now seek to join as an additional Defendant The Moore Company ("Moore") on the theory that it may be liable for defects in the fuel line of the personal watercraft that caused the accident in question.

Moore was not named initially because Plaintiffs assert that discovery they obtained recently reveals that the sale of the subject product line of fuel hoses from Tempo to Moore in 2008 "may have transferred all or substantially all of the manufacturing assets of Tempo … such that Moore received and undertook the same manufacturing operation previously owned by current Defendant Tempo and/or assumed liability for Tempo's conduct." Doc. 50-2 at 5. Plaintiff's point out, correctly, that Pennsylvania has adopted the product line exception as a means of imposing liability on successor entities. *Dawejko v. Jorgensen Steel Company*, 434 A. 2d 106 (Pa. Super. 1981). This reality was recognized in our circuit in *Kradel v. Fox River Tractor Co.* 308 F. 3d 328, 331-32 (3d Cir. 2002). The product line exception exists because, without it, the successor liability doctrine inevitably leaves some parties who are injured by defective products without recourse against any entity. *See Hill v. Trailmobile, Inc.*, 603 A. 2d 602, 606 (Pa. Super. 1992).

Plaintiffs also correctly acknowledge that a successor corporation does not become liable for all debts and liabilities of its predecessor simply because it acquires that predecessor's assets. (Doc. 50-2 at 6 citing *Continental Insurance Company v. Schneider, Inc.*, 810 A. 2d 127,131 (Pa. Super. 2002)). Continental sets forth the criteria for holding an acquiring company liable

for its seller's liabilities. Specifically, for imposition of successor liability, one of the following must be established: (1) the purchaser expressly or impliedly agreed to assume the obligations; (2) the transaction amounted to a consolidation or merger; (3)the purchasing corporation was merely a continuation of the selling corporation; (4) the transaction was fraudulently entered into to escape liability; or (5) the transfer was without adequate consideration and no provisions were made for creditors of the selling corporation. Continental, Supra at 131.

Defendant Tempo and prospective Defendant Moore acknowledge the accuracy of Plaintiffs' interpretation of the cases cited above. Nonetheless, Tempo and Moore assert that various exhibits to their brief compel the conclusion that Moore cannot possibly be liable to Plaintiffs under the theory of successor liability. Moore and Tempo also assert that Moore's contact with the Commonwealth of Pennsylvania is too tenuous to result in the imposition of subject matter jurisdiction over Moore.

With respect to Tempo and Moore's argument that an exhibit to their brief (Doc. 54-1, Exhibit A) establishes that Moore cannot possibly be liable to Plaintiffs on a successor liability theory, the Court is unpersuaded that such is the case. The exhibit in question is a "trademark assignment" dated May 26, 2017 from Moore to Inca Products Acquisition Corporation for, inter alia, various Tempo trademarks. The Court is unprepared to

accept that this "trademark assignment" which was made almost a year after the accident which gave rise to this law suit, categorically relieves Moore of any liability under a successor analysis. The document is cryptic and the Court finds that, at a minimum, Plaintiffs should be allowed to engage in discovery as to the totality of the relationship between Tempo and Moore. Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party may seek leave of court to amend a pleading and that such leave "shall be freely given when justice so requires." The general rule is that motions to amend under Rule 15(a)(2) should be liberally granted (*Long v. Wilson* 393 F.3d 390,400 (3d Cir. 2004)) in the absence of bad faith, dilatory motive, prejudice, or futility. *See Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir. 2000). Based upon the documents thus far submitted, the Court cannot find with confidence that Plaintiffs' request to join Moore is rooted in any of the criteria forbidden in Shane, supra. Accordingly, leave to amend is appropriate here.

    Tempo and Moore also argue that an affidavit submitted by one of Moore's officers (Doc. 54-1, Exhibit C) proves conclusively that Moore lacks the relevant minimum contacts with Pennsylvania to support this Court's exercise of jurisdiction over it. Tempo and Moore rely *upon Wylam v. Trader Joe's Company,* 2018 U.S. Dist. Lexis 8463, as supportive of their

minimum contacts interpretation. Having read Wylam, the Court is struck by two things; (1) the Defendant in Wylam who alleged that the Court did not have personal jurisdiction over it was an English corporation and, as such, far more removed from the Commonwealth of Pennsylvania than is Moore, a Rhode Island Company; and (2) despite provision of affidavits that tended to indicate that the English corporation did not have the requisite minimum contacts with Pennsylvania, the Wylam court permitted the parties to engage in discovery to test the propriety of asserting jurisdiction over the English corporation. This Court will do no less here.

Because the animating principle of the doctrine of successor liability is to ensure that parties injured by defective products are not left without recourse, because the Court cannot be sure that the business relationships between the various Defendants adequately provided for creditors of whichever party may ultimately be found responsible for Plaintiffs' injuries, and because the Pennsylvania long arm statute (42 Pa. C.S.A. § 5322 (b)) provides for personal jurisdiction "to the fullest extent allowed under the Constitution of the United States, Plaintiffs' Motion to File a Third Amended Complaint (Doc. 50) will be granted. If, as discovery progresses, Moore can demonstrate conclusively that it may not be properly considered an appropriate

Defendant in this case, it may then avail itself of other remedies available under the Federal Rules of Civil Procedure.

**BY THE COURT**

**S/Richard P. Conaboy**
**Richard P. Conaboy**
**United States District Judge**

**Dated: July 12, 2018**