THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON

MAR 0 3 2022

Per_____
DEPUTY CLERK

EUGENE RUDDY and REBECCA
RUDDY, husband and wife, individually
and as parents of S.R., a minor,

Plaintiffs,

v.

POLARIS INDUSTRIES, INC. et al.,

Defendants.

3:17-CV-0423
(JUDGE MARIANI)

## MEMORANDUM OPINION

### I. INTRODUCTION

On March 7, 2017, Plaintiffs Eugene Ruddy and Rebecca Ruddy, husband and wife, individually and as parents of S.R., a minor, filed a Complaint (Doc. 1) against multiple defendants, including Carter Fuel Systems, Inc. and Tenneco, Inc.[1] Collectively, Plaintiffs assert six claims against Defendants in their Fourth Amended Complaint (Doc. 69): negligence (Count I); strict liability (Count II); breach of warranty (Count III); gross negligence, recklessness, malice (Count IV); loss of consortium (Count V); and negligent infliction of emotional distress (Count VI). Presently before the Court is a Motion for Summary Judgment (Doc. 165) filed by Carter Fuel Systems, Inc. and Tenneco, Inc. (collectively, "Moving Defendants").

---

[1] By stipulation of the parties (Doc. 193) and Order of this Court, Tenneco, Inc. has been dismissed from this case.

Moving Defendants Carter Fuel and Tenneco, Inc. have submitted a Statement of Material Facts (Doc. 165) as to which they submit there is no genuine issue or dispute of material fact for trial, as well as a number of exhibits attached thereto. Plaintiffs submitted a Response to the Statement of Material Facts, along with a Counterstatement of Material Facts and a Brief in Opposition to Moving Defendants' Motion (Doc. 182, Doc. 183).[2]

These claims arise from events which occurred on July 27, 2016 at Wilsonville Campground on Lake Wallenpaupack. (Doc. 165 at ¶ 5). On that date, Plaintiffs Rebecca Ruddy and Scott Ruddy were allegedly sitting on a personal watercraft ("PWC") that was manufactured and sold by Polaris and when Plaintiffs attempted to turn on the PWC using the ignition, the PWC exploded. (*Id.* at ¶ 6). Plaintiffs Rebecca and Scott Ruddy each suffered severe injuries from the explosion. (*Id.*). Plaintiffs' PWC was manufactured and supplied by Polaris Industries, Inc., and Polaris Sales, Inc. (collectively, "Polaris") and Moving Defendants manufactured and supplied the fuel pump assembly which was installed into the PWC by Polaris. (*Id.* at ¶¶ 6, 9).[3]

---

[2] Plaintiffs' Counterstatement of Material Facts and Response to Defendants Carter Fuel Systems, Inc. and Tenneco, Inc's Statement of Material Facts is identical to their Counterstatement of Material Facts and Response to Defendants Carter Fuel Systems, Inc. and Tenneco, Inc's Statement of Material Facts submitted in response to Carter Fuel and Tenneco's Motion for Partial Summary Judgment (Doc. 164).

The Court considers only the moving party's statement of undisputed facts and the non-moving party's responses thereto. M.D. Pa. L.R. 56.1. Separate statements of fact not directly responsive to the movant's statement of facts are not contemplated by L.R. 56.1 and need not be given any evidentiary value. *Rau v. Allstate*, Civ. A. No. 3:16-CV-359, 2018 WL 6422121, at *2 (M.D. Pa. Dec. 6, 2018), *aff'd*, 793 F. App'x 84 (3d Cir. 2019).

[3]

For the reasons discussed below, the Court will deny Moving Defendants' Motion for Summary Judgment.

## II. LEGAL STANDARDS

### A. Standard of Review

Summary judgment is appropriate "only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gonzalez v. AMR*, 549 F.3d 219, 223 (3d Cir. 2008). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

---

> By way of background, initial Defendant Federal-Mogul Corporation sold its fuel pump product line by way of an Asset Purchase Agreement dated August 1, 2013 to Carter Fuel Systems, LLC. Pursuant to the Asset Purchase Agreement, Carter Fuel Systems, LLC, a Delaware Corporation, assumed the fuel pump product line to include information concerning the design and manufacture of any items included in the fuel line product line. On February 13, 2017, all existing rights, assets, debts and obligations of Federal-Mogul Corporation were vested in Federal-Mogul-LLC as a result of an entity conversion. Thereafter, on October 1, 2018, all existing rights, assets, debts and obligations of Federal Mogul LLC were vested in Tenneco Inc. as a result of a merger. As a result . . ., by order of this Court dated April 16, 2019, Federal-Mogul LLC and Federal-Mogul Corporation were dismissed from this case and Tenneco, Inc. was substituted in place of them.

(Doc. 165 at ¶¶ 7-8). However, as noted earlier, Tenneco, by stipulation and Order of this Court, has been dismissed from this case without prejudice.

3

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson,* 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

### B. Causes of Action

Plaintiffs assert a total of six claims against Defendants in their Fourth Amended Complaint ("Complaint") (Doc. 69): negligence (Count I); strict liability (Count II); breach of warranty (Count III)[4]; gross negligence, recklessness, malice (Count IV); loss of consortium

---

[4] Although Moving Defendants move for summary judgment on all claims asserted against them, they have failed to present an argument as to why Plaintiffs' claim for breach of warranty should be subject to summary judgment. However, that precise claim has been asserted by the Moore Company and Moeller Marine in their Motion for Summary Judgment (Doc. 169; Doc. 171) and is addressed in the Court's Opinion on their Motion for Summary Judgment. There, the Court ruled that Plaintiffs failed to raise a

5

(Count V); and negligent infliction of emotional distress (Count VI). Although Moving Defendants request this Court to dismiss all claims and cross-claims asserted against them (Doc. 165 at 15), Moving Defendants' Motion focuses solely on Plaintiffs' claim for strict liability and does not present arguments as to why they are entitled to summary judgment on the other five claims asserted in Plaintiffs' Complaint. Thus, the Court will only determine whether Moving Defendants are entitled to summary judgment on Count II of Plaintiffs' complaint.

### 1. Strict Liability

Pennsylvania law on the doctrine of products liability governs in a diversity action. *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 113 (3d Cir. 1992). The Supreme Court of Pennsylvania has adopted Section 402A of the Restatement (Second) of Torts. *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 359 (Pa. 2014) (citing *Webb v. Zern*, 220 A.2d 853 (Pa. 1966)). Section 402A provides:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or the consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>   a. The seller is engaged in the business of selling such product, and

---

genuine dispute of material fact regarding the arguable existence of an express warranty, and thus granted summary judgment on that claim. Additionally, the Court ruled that the applicable four-year statute of limitations (*see* 13 Pa. C.S.A. 2725) barred Plaintiffs' breach of implied warranty of merchantability and fitness claims from proceeding past the summary judgment stage, and the Court granted Moore and Moeller's motion for summary judgment on those claims as well. Since Plaintiffs' breach of warranty claims may not go forward in Moore and Moeller's Motion for Summary Judgment, it follows that summary judgment must be entered in favor of Polaris on Plaintiffs' claim for breach of warranty as well.

>    b. It is expected to and does reach the consumer without substantial change in the condition in which it is sold.
> (2) The rule stated in Subsection (1) applies although
>    a. The seller has exercised all possible care in the preparation and sale of his product, and
>    b. The user or consumer has not bought the product from or entered into any contractual relation with the seller.

To prevail on a strict liability claim, the plaintiff must prove that the product was defective due to a manufacturing, design, or failure-to-warn defect, that the defect existed when it left the defendant's hands, and that the product's defect caused the alleged harm. *Igwe v. Skaggs*, 258 F.Supp.3d 596, 609 (W.D.Pa. 2017) (*citing High v. Pa. Supply, Inc.*, 154 A.3d 341, 345-46 (Pa. Super. 2017)).

"[A] plaintiff pursuing a cause upon a theory of strict liability in tort must prove that the product is in a 'defective condition'" by demonstrating "either that (1) the danger is unknowable and unacceptable to the average or ordinary consumer, or that (2) a reasonable person would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions." *Tincher*, 104 A.3d at 335. The *Tincher* Court held that the issue of

> [w]hether a product is in a defective condition is a question of fact ordinarily submitted for determination to the finder of fact; the question is removed from the jury's consideration only where it is clear that reasonable minds could not differ on the issue. Thus, the trial court is relegated to its traditional role of determining issues of law, *e.g.*, on dispositive motions, and articulating the law for the jury, premised upon the governing legal theory, the facts adduced at trial and relevant advocacy by the parties.

7

*Id.* *Tincher* further explained that trial courts "do not necessarily have the expertise to conduct the social policy inquiry into the risks and utilities of a plethora of products and to decide as a matter of law, whether a product is unreasonably dangerous except perhaps in the most obvious cases." *Id.* at 380; *see also Lewis v. Lycoming*, 2015 WL 3444220, at *4 (E.D.Pa. May 29, 2015) ("There is ample room in the present record for the jury to decide what balance of risk and utility or what consumer expectations are appropriate with respect to the fuel servo."). With respect to strict liability claims that implicate the risk-utility calculus, the *Tincher* Court reasoned that

> when a plaintiff proceeds on a theory that implicates a risk-utility calculus, proof of risks and utilities are part of the burden to prove that the harm suffered was due to the defective condition of the product. The credibility of witnesses and testimony offered, the weight of evidence relevant to the risk-utility calculus, and whether a party has met the burden to prove the elements of the strict liability cause of action are issues for the finder of fact, whether the finder of fact is a judge or jury. A question of whether the party has met its burden of proof is properly 'removed' – for example, via adjudication of a dispositive motion – 'from the jury's consideration only where it is clear that reasonable minds [cannot] differ on the issue.' *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280, 1284-85 (1978).

*Tincher*, 104 A.2d at 408.

Manufacturers of both component parts and completed products can be held strictly liable, but Pennsylvania law limits a component part manufacturer's liability in cases that pursue a failure-to-warn defect theory. *See Tincher*, 104 A.3d at 402 ("[A] duality in the strict liability cause of action is evident in the expectation that all sellers in the distributive chain are legally responsible for the product in strict liability."). The Supreme Court of

Pennsylvania explained that "limits on a manufacturer's duty to warn are placed at issue where, as in the present case, the manufacturer supplies a mere component of a product that is assembled by another party and dangers are associated with the use of the finished product." *Jacobini v. V & O Press Co.*, 588 A.2d 476, 478 (Pa. 1991) (*citing Wenrick v. Schloemann-Siemag Aktiengesellschaft*, 523 Pa. 1, 564 A.2d 1244 (Pa. 1989)); *see also Fleck*, 981 F.2d at 117-18. The *Jacobini* Court noted that this limitation is "particularly true where the danger arises from the manner in which the component is utilized by the assembler of the final product, this being the matter over which the component manufacturer has no control." *Id.* at 479; *see also Fleck*, 981 F.2d at 118 ("[*Jacobini*] added dictum, however, that a manufacturer's duty to warn is limited when it supplies a component of a final product that is later assembled by another party and the dangers are associated with the use of the finished product.").

Courts in the Third Circuit have explained that "a component part manufacturer is relieved of a duty to warn only when the use to which its component part was put was not foreseeable to the manufacturer." *Colegrove v. Cameron Mach. Co.*, 172 F.Supp.2d 611, 627 (W.D.Pa. 2001); *see also Kurzinsky v. Petzl America, Inc.*, 794 F. App'x 187, 190 (3d Cir. 2019); *Stephens v. Paris Cleaners, Inc.*, 885 A.2d 59, 69 (Pa. Super. Ct. 2005) (applying *Colegrove*'s interpretation of Pennsylvania caselaw in this area and stating "[w]e find particularly instructive for purposes of this case the *Colegrove* court's note addressing the issue of causation with regard to a strict liability claim predicated on failure to warn").

9

Thus, "the critical inquiry is whether the manufacturer could foresee the use to which the component was put when incorporated into the finished product of another." *Id.* at 629; *Fleck*, 981 F.2d at 118 ("Since Hoffinger knew that its liner would ultimately be incorporated into a pool, and nothing else, it can then reasonably foresee the potential risk of failing to affix warning labels.").

### III. ANALYSIS

In their Motion for Summary Judgment (Doc. 165), Moving Defendants argue that the fuel pump assembly, the component part they supplied to Polaris for inclusion in the completed PWC, "was not defective in-and-of itself" and thus, they cannot be held liable to Plaintiffs' harms. (Doc. 165 at 2). Moving Defendants argue "the record is clear and Plaintiffs' own experts concede that any issues associated with the fuel pump assembly occurred because the fuel pump assembly was not appropriate for the particular use in Polaris' PWC because of the temperatures and heat cycles inside of the PWC." (*Id.* at 2 (emphasis omitted)). Moving Defendants maintain that "Polaris did not request Moving Defendants' advice or guidance as to how to integrate the fuel pump assembly into Polaris' PWC, or indeed whether it was appropriate for that application." (Doc. 201 at 3). Specifically, Moving Defendants contend that

> Polaris has taken a properly working and functional part – the fuel pump assembly provided by Moving Defendants – and integrated this component into the PWC. It was Polaris who designed, assembled, and sold their PWCs to consumers, not Moving Defendants. Accordingly, there can be no dispute of material fact that Moving Defendants are a component part manufacturer, and

10

that under the law of this Commonwealth, Moving Defendants cannot be held liable based on the uncontroverted facts.

(*Id.* at 14-15 (emphasis omitted)).

In response, Plaintiffs maintain that Moving Defendants' emphasis on component manufacturer liability is "misplaced" and argue that the "component parts were defective both in their application and contained a manufacturer[']s defect at the time they left the Moving Defendants['] control." (Doc. 183 at 12-13). According to Plaintiffs, there is "no evidence that any [fuel] barb actually met the manufacturer's specifications," and Plaintiffs' experts allegedly concluded that "the fuel barbs were defective at the time of manufacture when the barbs left Moving Defendants' possession." (*Id.* at 16). Finally, Plaintiffs argue that Moving Defendants could foresee that the fuel pump could create the type of danger that caused Plaintiffs' injuries, arguing that Moving Defendants had a duty to warn of a foreseeable known danger. (*Id.* at 20). Plaintiffs state:

> Clearly, Moving Defendants knew the fuel pump/barb was being installed in a Polaris PWC. In fact, in their motion, Moving Defendants assert that 'Polaris approached Federal-Mogul to build an in-tank fuel pump for their PWC.' Motion at ¶ 13. Yet, Federal Mogul/Carter provided no warnings that their product could create a danger due to temperature, age and strength failure. These key unknown facts required an independent duty to warn.

(*Id.* at 18).

Upon consideration of the relevant standard of review, the legal framework within which Plaintiffs' claims must be considered, Moving Defendants' Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment (Doc. 165), and

Plaintiffs' response thereto (Doc. 182; Doc. 183), the Court determines that genuine issues of material fact are in dispute, conflicting evidence must be weighed, and the credibility of witnesses may be at issue. These outstanding issues must be resolved by a jury.

As mentioned above, the Supreme Court of Pennsylvania has held that the issue of "[w]hether a product is in a defective condition is a question of fact ordinarily submitted to the jury[.]" *Tincher*, 104 A.3d at 335. The determination of whether a party is liable for strict liability is a jury issue and should be taken away from the jury "only where it is clear that reasonable minds could not differ on the issue." *Id.* In this case, "[t]here is ample room in the present record for the jury to decide what balance of risk and utility or what consumer expectations are appropriate with respect to" whether Moving Defendants manufactured and supplied a defective fuel pump assembly to Polaris for inclusion into the Ruddy PWC. *See Lewis*, 2015 WL 3444220, at *4 (denying defendant's motion for summary judgment on a strict liability claim). As such, it is the province of the jury at trial to determine whether the fuel pump assembly manufactured by Moving Defendants was defective.

Plaintiffs' experts, David Cooke, P.E., and Dr. Stephen Spiegelberg, Ph.D., tested an exemplar fuel barb and found that it "could not withstand Federal Mogul/Carter Fuel's own standard of 44.96 pounds of force in any direction. The exemplar fuel barb broke at 36.9 pound[s] of force." (Cooke's Report, Doc. 165, Ex. D at 13). Based on this testing, Mr. Cooke concluded that "the fuel barbs had a design defect and were not manufactured to withstand the tensional and torsional forces and stresses of routine testing activity" and that

"testing of an exemplar fuel pump further confirmed the defective design and manufacture of the fuel system and the cause of the explosion." (*Id.*). Similarly, Plaintiffs' other expert, Dr. Stephen Spiegelberg, Ph.D., explained that the "long and known history of fuel barbs routinely breaking was confirmed by my own testing which demonstrated that the fuel barbs on an exemplar fuel pump could not meet the manufactures' own specifications of being able to withstand force in any direction up to 200 Newtons, *i.e.*, 44.96 pounds." (Spiegelberg's Report, Doc. 165, Ex. E at 9; *see also* Wagner Dep. Tr., Doc. 183, Ex. H ("**Q.** If a fuel barb broke at 36.9 pounds of pressure – **A.** Um-hmm. **Q.** – it would be defective; correct? **A.** Yes.")). This evidence creates a genuine issue of material fact with respect to what caused Plaintiffs' PWC to explode. Furthermore, it creates a genuine issue of fact as to whether the fuel pump assembly incorporated into Plaintiffs' PWC was defective at the time it left Moving Defendants' custody and control. The experts' reports, and the testing described therein, is sufficient evidence to allow a reasonable jury to conclude that the fuel pump assembly was defective.

Although Moving Defendants attach the reports of Dr. Spiegelberg and Mr. Cooke to their Motion (*see* Doc. 165-5, Ex. D; Doc. 165-6, Ex. E), Moving Defendants raise objections with Dr. Spiegelberg's and Mr. Cooke's testing methods and admissibility of their reports for the first time in their Reply Brief to Plaintiffs' Opposition to Defendants Carter Fuel Systems, Inc. and Tenneco Inc. Motion for Summary Judgment (Doc. 201). In their Reply, Moving Defendants argue that the Court should not consider the fuel barb testing performed by

13

Plaintiffs' experts. (Doc. 201 at 3-4). Moving Defendants contend that "Plaintiffs have failed to advise this Court that the fuel barbs in the involved personal water craft, a Polaris Model 2002 Virage I were going to be tested" and that "the destructive testing performed on the exemplar was done privately without the knowledge, presence, or participation of any other party." (*Id.* at 3). Moving Defendants argue that Plaintiffs "cannot offer the destructive testing into evidence," so the Court should not evaluate such testing in its adjudication of the present Motion. (*Id.* at 2-4).

The Court will not consider this argument because it is raised for the first time in Moving Defendants' Reply Brief. "A reply brief is not the appropriate forum in which to raise new issues and the court need not address issues raised for the first time therein." *Bell v. Lackawanna Cty.*, 892 F. Supp. 2d 647, 688 n.41 (M.D. Pa. 2012); *see also United States v. Martin*, 454 F. Supp. 2d 278, 281 n. 3 (E.D. Pa. 2006) ("A reply brief is intended only to provide an opportunity to respond to the arguments raised in the response brief; it is not intended as a forum to raise new issues."). Moving Defendants will have an opportunity to object to Plaintiffs' evidence, including their expert witnesses and any evidence upon which the experts relied on to form their conclusions, at trial or in a pretrial motion. The Court cannot and will not consider arguments raised for the first time in Moving Defendants' Reply. Moving Defendants attached Plaintiffs' expert reports as exhibits to their Motion for Summary Judgment and failed to mention their objection to the experts'

14

exemplar fuel barb tests. (*See generally* Doc. 165). Accordingly, summary judgment will not be entered on Plaintiffs' claims based on a design defect of the fuel pump assembly.

Moving Defendants center their Motion on the argument that because Moving Defendants manufactured a component part of the completed PWC that they allege was not defective, they cannot be held liable for Plaintiffs' harms. (Doc. 165 at 15). Contrary to Moving Defendants' argument, they are not absolved of liability on a failure-to-warn theory simply because they are component part manufacturers. As discussed above, the limitation on a component part manufacturer's liability applies "only when the use to which its component was put was not foreseeable to the manufacturer." *Colegrove*, 172 F.Supp.2d at 627. Here, Moving Defendants' Exhibit C demonstrates that Gordon Slattery of Polaris approached Moving Defendants in 1997 with "fuel system requirements for DFI personal watercraft." (Polaris Communication to Federal-Mogul, Doc. 165, Ex. C at 1-2). Mr. Slattery explained, "I think we would prefer an in tank pump, but at this point are open to options." (*Id.* at 1). This correspondence creates, at the very least, a genuine issue of material fact as to whether Moving Defendants could foresee the use to which the fuel pump assembly was put, namely, as an in-tank fuel pump in a PWC.

Furthermore, Mr. Slattery on behalf of Polaris appears to invite the recommendations or input of Moving Defendants because he states that "we are open to options." (*See id.*); *c.f. Wenrick*, 564 A.2d at 1247 ("Specifically, there is no evidence that Cutler-Hammer, in designing the electrical control system, had any indication of the placement of the service pit

15

located under the press or of the steps into the pit."). This evidence shows that there is a genuine issue regarding whether Moving Defendants had any control over the specifications or placement of the fuel pump assembly in Polaris' PWC. Accordingly, there exists a genuine issue of material fact that must be resolved by the jury at trial, and Plaintiffs' strict liability claim based on a failure-to-warn theory will not be dismissed.

## IV. CONCLUSION

Based on the foregoing analysis, the Court will deny the Motion for Summary Judgment of Defendants, Carter Fuel Systems, Inc. and Tenneco, Inc. (Doc. 165) for Counts I, II, IV, V, and VI and grant their Motion as to Count III. A separate Order follows.

_____
Robert D. Mariani
United States District Judge